UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.

GUANTANAMERA CIGAR CO.,
A Florida Corporation,

    Plaintiff
(appellant of TTAB decision),
v.

CORPORACION HABANOS, S.A.
A Cuban Entity Jointly Owned by the
Cuban Government and a Spanish Entity
Known as Altadis, S.A.[1]

    Defendant
(appellee of TTAB    decision).
_____/

**Appeal from
TTAB
Opposition No.
91152248**

### COMPLAINT/APPEAL FROM UNITED STATES PATENT AND TRADEMARK OFFICE TRADEMARK TRIAL AND APPEAL BOARD DECISION

Plaintiff, Guantanamera Cigar Company (hereinafter "Guantanamera", "Plaintiff", or "Applicant"), sues Defendant, Corporacion Habanos, S.A. (hereinafter "Habanos", "Defendant" or "Opposer") or otherwise seeks appeal of an Order entered by the United States Patent and Trademark Office's Trademark Trial and Appeal Board ("T.T.A.B.") and alleges:

### BASIS OF LAW FOR APPEAL

1.      This is an action for *de novo* review of an Order entered on February 29, 2008 by the T.T.A.B., an administrative agency of the United States Patent and Trademark Office ("P.T.O."). See Exhibits A & B.

---

[1] Pursuant to 15 U.S.C. 1071(b)(4), "any party in interest may become a party to the action." While, Altadis, S.A. is not currently being made a party, Plaintiff reserves its right to bring Altadis, S.A. into the action, should it become necessary.

2.    A party "dissatisfied with the decision of the TTAB . . . may . . . have remedy by civil action." 15 U.S.C. §1071(b)(1).  The request for an appeal may be brought within sixty (60) days of such a decision, thus this action is timely as the deadline to file this appeal is April 29, 2008.

3.    This court has jurisdiction and venue over this petition for review under 15 U.S.C. §1071(b).

4.    By way of background, an appeal to a United States District Court of a P.T.O. factual determination is both an appeal and new action, which allows parties to request additional relief and to submit new evidence.  CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660 (7th Cir. 2001) (citing Spraying Sys. Co. v. Delavan, Inc., 975 F.2d 387, 390 (7th Cir. 1992)).  As such, this District Court sits in a dual capacity.  It is the appellate reviewer of facts found by the T.T.A.B. and is also a fact-finder based on new evidence introduced to the court.  3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §21:20, at 21-26.

5.    The United States District Court for the District of Columbia is the appropriate District Court in so much as Habanos is a foreign entity.  See 15 U.S.C. 1071(b)(4).

6.    The proper standard of judicial review of findings of fact made by the T.T.A.B. is not the stricter "clearly erroneous" standard but rather the slightly more deferential "substantial evidence" standard of the Administrative Procedure Act ("A.P.A."), 5 U.S.C. §706.  Dickinson v. Zurko, 527 U.S. 150 (1999).

7.    Section 706 of the A.P.A. sets forth the standards governing the scope of judicial review of agency fact finding: The reviewing court shall –

(2) hold unlawful and set aside agency . . . findings . . . found to be –

(A) **arbitrary, capricious,** [or] **an abuse of discretion,** or . . .

(E) **unsupported by substantial evidence** in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute . . .

In making the foregoing determinations, the court shall review the whole record or those parts of its cited by a party . . .

5 U.S.C. §706.

8.      The Supreme Court has described the A.P.A. "court/agency 'substantial evidence' standard as requiring a court to ask whether a 'reasonable mind might accept' a particular evidentiary record as 'adequate to support a conclusion'." Zurko, 527 U.S. at 162 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Further, the Supreme Court has suggested that this standard is less strict then the court/court "clearly erroneous" standard. Id. (citing Universal Camera Corp. v. NLRB, 340 U.S 474, 477 (1946)).

9.      Under 15 U.S.C. §1071(b)(1), Plaintiff/Applicant not only seeks to introduce the evidence which the T.T.A.B. originally excluded but also new evidence by way of discovery in this proceeding that will further bolster its position and show that only a small portion of the relevant consuming public (if any at all) associates the primary significance of the mark "GUANTANAMERA" as being anything other than a famous song of the same name.

### THE PARTIES

10.      Guantanamera is a Florida corporation doing business at 285 NW 27 Avenue, Miami, Florida 33125. Since at least as early as May, 1998, Guantanamera has been doing business in Miami-Dade County, Florida and throughout the United States.

11.      Guantanamera has used the distinct and arbitrary term "GUANTANAMERA" as a trademark for use in connection with tobacco, namely, cigars in interstate commerce since at least as early as 1997.

12.     Habanos is a company organized under the laws of Cuba with its principal place of business at Avenida 3ra, No. 2006 Miramar, Havana, Cuba. Habanos is a venture company composed of an agency of the Republic of Cuba and a foreign Spanish entity known as Altadis, S.A.

## BACKGROUND OF THE DISPUTE

13.     After having used its trademark in commerce since at least as early as 1997, Applicant filed its Federal Trademark Application Serial No. 76/256,068 for the term "GUANTANAMERA" for use in connection with tobacco, namely cigars, on May 14, 2001.

14.     On April 24, 2002 the P.T.O. approved Applicant's Trademark Application for publication. Approval for publication of Applicant's trademark application was accomplished without an objection by the Trademark Examiner assigned to the application.

15.     On June 12, 2002, Habanos filed a Notice of Opposition alleging, among other grounds,[2] that Applicant's applied for mark was primarily geographically deceptively misdescriptive, and in so doing initiated Opposition Proceeding No. 91,152,248 before the T.T.A.B.

16.     Applicant denied the salient allegations and objected to Opposer's standing to bring such an action. Litigation ensued over the course of six (6) years.

17.     On February 29, 2008, the T.T.A.B. issued an order [marking that order as "this opinion is precedent of the T.T.A.B."] and improperly found that Applicant's applied-for mark is

---

[2] Opposer original "Notice of Opposition" contained the following counts: (1) Count I, the applied for mark by Applicant is primarily geographically deceptively misdescriptive within the meaning of Section 2(e)(3) of the Lanham Act. Notice of Opposition, p. 9; (2) Count II, the applied for mark by Applicant is deceptive within the meaning of Section 2(a) of the Lanham Act. Notice of Opposition, p. 10; and (3) Count III, the Applicant committed fraud on the Trademark Office during the application process because (a) Applicant did not have a bona fide use of the applied for mark. Notice of Opposition, p. 9; and (b) Applicant should have provided the Trademark Office with a translation of the trademark. Notice of Opposition, pp. 10-11. The issue relating to Count III as to Fraud on the Trademark Office relating to bona fide intent to use the mark was decided at the Summary Judgment stage. The February 29, 2008 Order appealed from here today only decided Count I, finding no need to decide Count II as it was encompassed by Count I, and finding no need to decide Count III as to fraud relating to the translation.

primarily geographically deceptively misdescriptive and refused registration of Applicant's applied for mark. See Exhibit A.

18.    The T.T.A.B. also found that Opposer established standing. The basis for such a finding was due in part to Section 515.527 of the Cuban Assets Control Regulations, 31 C.F.R. Part 515. This regulation contravenes federal statutes and common law that have long established that trademark rights arise in the United States through use of the mark in United States commerce. This regulation creates a fiction of law excusing Cuban entities from establishing use of a trademark in the United States. It therefore creates a further extension of that fiction of law by providing "standing" for a Cuban entity to "file an opposition to the registration of a new trademark ... where these actions relate to the protection of a trademark in which Cuba ... has an interest." Id.

19.    On that same day, the T.T.A.B. also issued a separate evidentiary order, [marking that order as "this opinion is not precedent of the T.T.A.B."], and improperly overruled many of Applicant's evidentiary objections. See Exhibit B.

20.    In what commentators have called a first, the T.T.A.B. issued two orders relating to the same Opposition, one precedent of the T.T.A.B., while the other is not precedent of the T.T.A.B. See Exhibit C. This was also an error by the T.T.A.B.

## LAW OF TRADEMARKS THAT ARE PRIMARILY GEOGRAPHICALLY DECEPTIVELY MISDESCRIPTIVE

21.    Under 15 U.S.C. §1052(e)(3) a trademark that "when used in connection with the goods of the applicant is primarily geographically deceptively misdescriptive of them" is not registrable with the United States Patent and Trademark Office.

22.    A trademark is considered "primarily geographically deceptively misdescriptive" if: (1) the primary significance of the mark is a generally known geographic location; (2) the

consuming public is likely to believe the place identified by the mark indicates the origin of the goods bearing the mark, when in fact the goods did not come from that place (hereinafter referred as the "goods/place association"); and (3) the misrepresentation was a material factor in the consumer's decision. See In re California Innovations, Inc., 329 F. 3d 1334, 1341 (Fed. Cir. 2003).

23.     The question of whether Applicant's trademark "GUANTANAMERA" is primarily geographically deceptively misdescriptive of Applicant's cigar goods is a question of fact. In re Compagnie Generale Maritime, 993 F.2d 841, 845 (Fed. Cir. 1993) ("Whether a mark is primarily geographically descriptive or deceptively misdescriptive is a question of fact."). This court cannot uphold the T.T.A.B.'s factual findings in the instant matter since "they are unsupported by substantial evidence." See In re California Innovations, Inc., 329 F. 3d at 1334 (quoting Recot, Inc. v. M.C. Becton, 214 F.3d 1322, 1327 (Fed. Cir. 2000)).

24.     The T.T.A.B.'s February 29, 2008 Order/factual findings are unsupported by substantial evidence. The "substantial evidence" standard is, as discussed *supra* "considered to be less deferential and requires stricter judicial review of T.T.A.B. fact finding." 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, § 21:22.1; see also Pro-Football v. Harjo, 284 F. Supp.2d 96, 125-126 (D.D.C. 2003) (the District Court set aside the T.T.A.B.'s factual finding because it concluded that "the T.T.A.B.'s finding that the marks at issue 'may disparage' Native Americans is unsupported by substantial evidence, is logically flawed, and fails to apply the correct legal standard to its own findings of fact.")

25.     In determining that the Applicant's applied for mark is primarily geographically deceptively misdescriptive, the T.T.A.B. failed to identify the relevant consumers. In its factual finding the T.T.A.B. described the relevant consuming public as consisting of Cubans, Cuban-

6

Americans, Spanish speaking Americans or Non-Spanish Speaking Americans.  As such, without first ascertaining the relevant consuming public, it is very difficult, if not impossible to determine the primary significance of the mark.  In any event, the complete absence of evidence to identify the correct relevant consuming public demands a finding that Opposer has failed to prove this aspect of its case.

26.      During the T.T.A.B. proceeding Applicant submitted substantial evidence not only to buttress its claim that the primary significance of the term "GUANTANAMERA" to the relevant consuming public refers to the title of a song but also to rebut Opposer/Habanos' claim that the primary significance of the mark is to "a female from Guantanamo."

27.      In fact, Opposer's own packaging of its infringing[3] "GUANTANAMERA" product bears an image of a guitar which reinforces the primary significance of the term as relating to the title of a song which is traditionally accompanied by a guitar.

28.      In fact, Opposer's own website, located at www.habanos.com indicates that the term "'Guantanamera' is the title of the famous song ..."  This reinforces Applicant's position that the primary significance of the term to the relevant consuming public refers to the title of a song, and not as a reference to a geographic location.

29.      In fact, Opposer's own products bearing "GUANTANAMERA" do not come from Guantanamo, but rather are "machine made at a modern factory recently created in Havana."  Thus, Habanos' own arguments that the term immediately conveys that the product comes from Guantanamo (or otherwise leads consumers to believe that there is a goods/place association), is belied by its own marketing material.

---

[3] While this is not an action for trademark infringement, Plaintiff reserves its right to bring a separate federal action against Habanos and others for its sale of cigars bearing the trademark as found on the Internet.  Specifically, Habanos has either directly or indirectly by way of willful blindness sold their version of the "GUANTANAMERA" cigar brand to United States consumers.

30.     The T.T.A.B. erred in stating that because some of the relevant consuming public speaks or understands Spanish and that this small segment of the relevant class of consumers might understand the term "GUANTANAMERA" to mean "a female from Guantanamo," that all or most consumers (whether or not they understand Spanish) would recognize the term to have such a meaning.

31.     Further, despite Applicant's evidence and claims that the primary significance of the term "GUANTANAMERA" relates to a song, the Opposer argued and the T.T.A.B. incorrectly found that the average consumer will engage in a multi-step analysis of the term "GUANTANAMERA" to make the connection between "GUANTANAMERA" and Guantanamo Bay, Cuba. For example, according to Opposer and the T.T.A.B., the average consumer encountering the term "GUANTANAMERA" will automatically know that it refers to a "female from Guantanamo" and "of or from Guantanamo" and know the significance of the "era" ending within a Spanish term and then somehow arrive at the conclusion that the term "GUANTANAMERA" refers to Guantanamo Bay, Cuba. However, the average consumer will not engage in this multi-step analysis but merely concluded that the primary significance of the term "GUANTANAMERA" is to a song. See In re Nantucket, 677 F.2d 95, 97-98 (CCPA 1982) (court found that the term must be a "readily recognizable geographic meaning.")

32.     The T.T.A.B. also erred in giving weight to Opposer's "expert witness," Flora Gonzalez, because as stated in the T.T.A.B.'s opinion, Ms. Gonzalez's apparent area of expertise is in Cuban literature and Cuban writers. While she may have been a qualified expert for assessing the primary significance of the term "GUANTANAMERA" to cigar consumers residing in Cuba, she is not qualified as an expert to speak of the primary significance of the term "GUANTANAMERA" to the relevant class of consumers in the United States. Further,

Opposer's "expert witness" Flora Gonzalez's testimony should have been given no evidentiary weight since she admitted to have a professional relationship with Opposer's law firm and is otherwise biased in favor of the government of Cuba for its *quid pro quo* treatment of her and her family members, who until recently, were unable to leave Cuba. As an "expert" in Cuban literature and Cuban writers, Ms. Gonzalez is clearly concerned about keeping her relationships with the government of Cuba in tact so as to assure that she can freely travel to and from Cuba .

33.    Moreover, assuming *arguendo* that Opposer did establish that the primary significance of the term "GUANTANAMERA" was Guantanamo, which Applicant contends was not established, it would still be insufficient to prove that the term "GUANTANAMERA" is primarily geographically deceptively misdescriptive because Guantanamo is not known for its tobacco products. Opposer has not produced any evidence to illustrate that "the goods like applicant's goods or related to applicant's goods are a principal product of the geographical area named by the mark." In re House of Windsor, 221 U.S.P.Q. 53, 57 (T.T.A.B. 1983).

34.    Regarding the goods/place association prong in determining whether Applicant's applied for mark is primarily geographically deceptively misdescriptive, the T.T.A.B. erred in determining that Opposer provided "substantial evidence" to support its claim that the consuming public is likely to believe that Applicant's cigars originate in Guantanamo, Cuba. The only evidence cited by the T.T.A.B. linking tobacco production to Guantanamo is the deposition of Mr. Morejon, Opposer's vice-president. See Opinion Pg. 18. Applicant objected to any testimony from Mr. Morejon as he is not personally subject to the perjury laws of the United States, is clearly biased in support of his employer Opposer and the Government of Cuba, and is otherwise an untrustworthy witness. The remainder of the evidence cited by the T.T.A.B. discusses the province of Oriente, eastern Cuba, western Cuba, Vuelta Abajo and Vuelta Ariba

as the regions where tobacco is grown.   Nonetheless, Opposer's claim that since Guantanamo is part of the former province of Oriente and Oriente is known for its tobacco production, the average consumers will make the connection between tobacco and Guantanamo.   However, this is pure supposition as Opposer did not provide any evidence to establish this connection.   In any event, this multi-step analysis is simply ridiculous and not what is contemplated by 15 U.S.C. §1052(e)(3) and the case law interpreting same.

35.     Not only did the Opposer not provide sufficient evidence to support a goods/place association, Opposer failed to provide sufficient evidence to support the T.T.A.B.'s finding that the misrepresentation is a material factor in the consumer's decision to purchase the cigars.   In making this determination, the T.T.A.B. simply inferred that the misrepresentation was material by relying on the goods/place association, which was not established, and Opposer's evidence establishing Cuba's renown and reputation for high quality cigars.   This inference is insufficient to prove the third element because according to the court in In re California Innovations, NAFTA and the amended Lanham Act placed an emphasis on actual misleading of the public.   In re California Innovations, 329 F.3d at 1340 ("The relatively easy burden of showing a naked goods-place association without proof that the association is material to the consumer's decision is no longer justified.")(emphasis added). Not only is there insufficient evidence to support the T.T.A.B.'s factual finding, the record is completely devoid of any evidence illustrating that this alleged misrepresentation is a material factor in the consumer's decision to purchase cigars.  15 U.S.C. §1053(e)(3) requires proof of deception with the consequence of non-registrability. See In re California Innovations Inc., 329 F.3d at 1340.   There is a complete absence of evidence in the record that anyone was deceived.

## COUNT I
## APPEAL OF THE T.T.A.B.'S DECISION;
## PLAINTIFF'S TRADEMARK IS NOT PRIMARILY GEOGRAPHICALLY
## MISDESCRIPTIVE UNDER SECTION 2(e)(3) OF THE LANHAM ACT

36.     The     T.T.A.B.'s     finding     that     Applicant's     applied     for     mark
"GUANTANAMERA" was primarily geographically deceptively misdescriptive was not
supported by substantial evidence, it should be reversed.

37.     The T.T.A.B.'s finding that "the primary significance of the mark is a generally
known geographic location" was not supported by substantial evidence, it should be reversed.

38.     The T.T.A.B.'s finding that there is a "good-place association" between
Applicant's use of its mark and the City of Guantanamo, Cuba was not supported by substantial
evidence, it should be reversed.

39.     The T.T.A.B.'s finding that there was a "misrepresentation" and that this
"misrepresentation was a material factor in the consumer's decision to purchase cigars" was not
supported by substantial evidence, it should be reversed.

## COUNT II
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201

40.     Plaintiff seeks a declaratory judgment from this Court that its applied for mark is
suitable for Federal Registration with the United States Patent and Trademark Office.

41.     Plaintiff seeks a declaratory judgment that its common law rights in its trademark
"GUANTANAMERA" as used in connection with tobacco, namely cigars, dating back to at least
as early as 1997 are fully enforceable.

42.     There is presently before this Court and actual controversy such that this Court
has jurisdiction to entertain a request for a declaratory judgment.

43.     28 U.S.C. §2201(a) reads in part as follows:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights or other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

44.     Plaintiff is entitled to a judicial determination of its trademark rights as well as any judicial determination regarding the issues surrounding this dispute with Defendant.

**COUNT III**
**APPEAL OF T.T.A.B.'S DECISION THAT OPPOSER HAD STANDING TO OPPOSE**

45.     The Plaintiff appeals or otherwise seeks a declaratory judgment that the Opposer never had standing to oppose Applicant's mark.

46.     Section 515.527 of the Cuban Assets Control Regulations, 31 C.F.R. Part 515 is a federal regulation promulgated to deal with the unique circumstances that relate to the Cuban Embargo.

47.     This regulation contravenes federal statutes and common law that have long established that trademark rights arise in the United States through use of the mark in United States commerce.

48.     This regulation creates a fiction of law excusing Cuban entities from establishing use of a trademark in the United States.

49.     This regulation therefore creates a further extension of that fiction of law by providing "standing" for a Cuban entity to "file an opposition to the registration of a new trademark ... where these actions relate to the protection of a trademark in which Cuba ... has an interest." Id.

WHEREFORE, Plaintiff/Applicant, GUANTANAMERA, demands:

(a)     Judgment reversing the finding of the T.T.A.B.'s February 29, 2008 Order on the merits;

12

(a)     Judgment reversing portions of the T.T.A.B.'s February 29, 2008 evidentiary Order which overruled certain of Applicant's evidentiary objections;

(b)     An order vacating the T.T.A.B.'s February 29, 2008 Order on the merits;

(c)     An order vacating the T.T.A.B.'s February 29, 2008 evidentiary Order;

(d)     Judgment that Applicant is entitled to register its applied for mark, Serial No. 76/256,068 for "GUANTANAMERA" for use in connection with "tobacco, namely, cigars;"

(e)     Judgment that Applicant is the rightful owner of the common law trademark rights in "GUANTANAMERA" in the United States as applied to goods and services such tobacco, namely, cigars;

(f)     Judgment or other declaration that Opposer never had standing to file the underlying opposition proceeding;

(g)     Judgment that Section 515.527 of the Cuban Assets Control Regulations, 31 C.F.R. Part 515 contravenes federal statutes; and

(h)     Such other relief as this Court finds appropriate.

Respectfully submitted,

By:  _____

Lisa N. Kaufman, Esq.
D.C. Bar No. 351866
Admitted to U.S.D.C. D.C.
3408 Rebecca Jane Way
Alexandria, Virginia 22310
Tel.: (703) 960-0805
Fax.: (703) 960-0805*51
Email: lnktm@verizon.net

And

Frank Herrera
Florida Bar No. 494801
Email: fherrera@rra-law.com
Gustavo Sardiña
Florida Bar No.: 31162
Email: gsardina@rra-law.com
JanPaul Guzman
Florida Bar No.: 16064
Email: jpguzman@rra-law.com
ROTHSTEIN ROSENFELDT ADLER
401 East Las Olas Blvd., Suite 1650
Fort Lauderdale, Florida 33301
Telephone: (954) 522-3456
Facsimile: (954) 527-8863
*To be admitted pro hac vice*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.

GUANTANAMERA CIGAR CO.,
A Florida Corporation,

     Plaintiff
(appellant of TTAB decision),
v.

CORPORACION HABANOS, S.A.
A Cuban Entity Jointly Owned by the
Cuban Government and a Spanish Entity
Known as Altadis, S.A.

     Defendant
(appellee of TTAB    decision).
_____/

**Appeal from
TTAB
Opposition No.
91152248**

# <u>EXHIBIT A</u>

1

> THIS OPINION IS
> A PRECEDENT
> OF THE T.T.A.B.

Mailed:
February 29, 2008

## UNITED STATES PATENT AND TRADEMARK OFFICE

———

## Trademark Trial and Appeal Board

———

Corporacion Habanos, S.A.

v.

Guantanamera Cigars Company[1]

———

Opposition No. 91152248 to application
Serial No. 76256068 filed on May 14, 2001

———

David B. Goldstein of Rabinowitz, Boudin, Standard, Krinsky
& Lieberman, P.C. for Corporacion Habanos, S.A.

Frank Herrera of Frank Herrera, P.A. for Guantanamera Cigars
Company.

———

Before Hairston, Zervas and Cataldo, Administrative
Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:

Guantanamera Cigars Company ("applicant") is the owner

of an application (filed on May 14, 2001) for registration

of the mark GUANTANAMERA (in standard character form) on the

---

[1] On September 26, 2003, the Board granted applicant's motion to
substitute Guantanamera Cigars Company for Guantanamera Cigars,
Inc., which was identified in the original application. Thus,
opposer's statement in fn. 3 of its brief that the Board has not
acted on applicant's motion to substitute is incorrect.

Principal Register for "tobacco, namely cigars" in International Class 34. Applicant has claimed first use anywhere and first use in commerce on May 1, 2000.

Corporacion Habanos, S.A. ("opposer"), a Cuban company, has opposed registration of applicant's mark. In its notice of opposition, opposer has alleged that it has pending an application to register the mark GUANTANAMERA in the United States for cigars, articles for smokers and matches; that its ability to register its mark, and use the mark in the United States, will be impaired if applicant is allowed to register its mark; that the term GUANTANAMERA denotes "(i) the feminine adjectival form of GUANTANAMO, meaning having to do with or belonging to the city or province of Guantanamo, Cuba; and/or (ii) a woman from the city or province of Guantanamo, Cuba"; and that all Spanish speakers and United States consumers would so understand the term. As grounds for opposition, opposer has alleged that applicant's mark is primarily geographically deceptively misdescriptive within the meaning of Trademark Act §2(e)(3) and deceptive within the meaning of Trademark Act §2(a); and that applicant has committed fraud on the U.S. Patent and Trademark Office in that applicant knew or should have known that it made false, material misrepresentations to the

Office when it informed the Office that its mark

GUANTANAMERA had no meaning or English translation.[2]

Applicant has answered the amended notice of opposition

by denying the salient allegations thereof.  This case has

been fully briefed.

## The Record

The record consists of the pleadings; the file of the

involved application; the trial testimony on written

questions and exhibits of Manuel G. Morejon, opposer's

Commercial Vice-President; the trial testimony and exhibits

of Professor Flora Gonzalez, opposer's expert witness; the

trial testimony and exhibits of Jose L. Montagne,

applicant's President; opposer's notice of reliance and

exhibits thereto; applicant's notice of reliance and

exhibits thereto; and opposer's rebuttal notice of reliance

and exhibits thereto.

## Applicant's Motion to Strike

By separate motion filed on June 18, 2007, applicant

has moved to strike opposer's entire reply brief.  Applicant

contends that applicant filed a statement of evidentiary

objections apart from its main brief; that TBMP § 801.03 (2d

ed. rev. 2004) provides that "[i]f a plaintiff files a reply

---

[2] Opposer also has alleged that applicant's mark is deceptively
misdescriptive within the meaning of Trademark Act §2(e)(1), 15
U.S.C. § 1052(e)(1).  Because opposer has not discussed its
Section 2(e)(1) claim in its brief, we consider opposer to have
waived any such claim.

brief, the brief must be confined to rebutting the defendant's main brief"; and that "[s]ince the Statement of Evidentiary Objections is not within the 'main brief' of Applicant's Trial Brief, such cannot be the subject of rebuttal or other arguments by Opposer in its Trial Reply Brief." Motion at p. 2.

Inasmuch as a party has the option of making evidentiary objections in a main brief or in a separate statement, by extension, a response to evidentiary objections may be made in a responsive brief or in a separate statement. See TBMP § 801.03. Applicant's motion is therefore denied and we have considered opposer's response in its entirety.[3]

*Standing*

To establish standing, opposer must show that it has a "real interest" in the outcome of the proceeding; that is, that it has a direct and personal stake in the outcome of the opposition. *See Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025-26 (Fed. Cir. 1999); *Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 823 F.2d 490, 2 USPQ2d 2021, 2023 (Fed. Cir. 1987) ("it is in the pleading stage of the opposition proceeding that the opposer must plead facts

---

[3] Because of the large number of objections applicant has made to opposer's evidence, as well as the large number of objections opposer has made to applicant's evidence, we have set forth our rulings on each party's objections in a separate order.

4

sufficient only to show a personal interest in the outcome of the case beyond that of the general public.").

Opposer has submitted evidence that it has filed an application for the mark GUANTANAMERA with the U.S. Patent and Trademark Office for "cigars, matches, cigar cutters, cigar boxes, cigar holders, tobacco pouches, smokers' pipes, ashtrays, match boxes and humidors," which Office records indicate has been suspended. Opposer's notice of reliance ex. 9. Opposer, a Cuban entity subject to the U.S. embargo on Cuban goods, has also submitted a letter from the Department of Treasury confirming that Cuban entities are permitted under Section 515.527 of the Cuban Assets Control Regulations, 31 C.F.R. Part 515, to "file an opposition to the registration of a new trademark … where these actions relate to the protection of a trademark in which Cuba … has an interest." Opposer's notice of reliance ex. 5. In view thereof, we find that opposer has a "real interest" in the outcome of this proceeding; that opposer, as a Cuban entity, is not restricted from pursuing this opposition; and that opposer has established its standing.

### Opposer's Section 2(a) Claim

The Federal Circuit, in addressing Sections 2(a) and 2(e)(3) in view of changes to the Trademark Act due to the North American Free Trade Agreement (NAFTA) Implementation

5

Opposition No. 91152248

Act, Pub. L. No. 103-182, 107 Stat. 2057 (1993), has stated

as follows:

> The amended Lanham Act gives geographically
> deceptively misdescriptive marks the same
> treatment as geographically deceptive marks under
> §1052(a).
>
> ***
>
> As a result of the NAFTA changes to the Lanham
> Act, geographic deception is specifically dealt
> with in subsection (e)(3), while deception in
> general continues to be addressed under subsection
> (a).  Consequently this court anticipates that the
> PTO will usually address geographically deceptive
> marks under subsection (e)(3) of the amended
> Lanham Act rather than subsection (a).  While
> there are identical legal standards for deception
> in each section, subsection (e)(3) specifically
> involves deception involving geographic marks.

*In re California Innovations, Inc.*, 329 F.3d 1334, 66

USPQ2d 1853, 1856-57 (Fed. Cir. 2003).  See also *In re*

*South Park Cigar, Inc.*, 82 USPQ2d 1507, 1509 (TTAB 2007)

(the appropriate refusal for an examining attorney in an ex

parte matter involving an allegedly geographically

deceptive mark is only the Section 2(e)(3) primarily

geographically deceptively misdescriptive, and not the

Section 2(a) deceptiveness refusal).  In view thereof, we

give no further consideration to petitioner's Section 2(a)

claim, but consider the Section 2(e)(3) ground.

*Opposer's Section 2(e)(3) Claim*

The elements of a Section 2(e)(3) claim are as follows:

(a) the primary significance of the mark is a generally

6

Opposition No. 91152248

known geographic location; (b) the consuming public is
likely to believe the place identified by the mark indicates
the origin of the goods bearing the mark (i.e., that a
goods-place association exists), when in fact the goods do
not come from that place; and (c) the misrepresentation
would be a material factor in the consumer's decision to
purchase the goods. *California Innovations*, 66 USPQ2d at
1858. We address each of these elements in turn below.

> a. *The primary significance of the mark is a generally
> known geographic location.*

Opposer has shown from entries in *The Columbia
Gazetteer of North America* (2000) that "Guantanamo" is the
name of a city in eastern Cuba of about 200,000 people and
is the name of the province in which that city is located;
and that Guantanamo Bay, Cuba, in Guantanamo province, is
the site of a United States naval base. Opposer's notice
of reliance ex. 11. Through numerous articles in *The New
York Times, The Miami Herald* and other newspapers regarding
the naval base and the U.S. detention facility for
terrorism suspects located at the naval base, opposer has
established that the relevant public, composed of consumers
of cigars in the United States, is familiar with Guantanamo
Bay, Cuba, which is also referred to in newspapers as
"Guantanamo." See opposer's notice of reliance ex. 12 and
13. We therefore find that opposer has established that

Opposition No. 91152248

Guantanamo is a geographic location in Cuba and that
Guantanamo, Cuba is known to the relevant public.

Opposer has also established that "guantanamera" is
translated from Spanish to "female person from Guantanamo,"
and "of or from Guantanamo."  "Guantanamera" is defined in
*Larousse Gran Diccionario* (2d ed. 2002) as "of/from
Guantanamo (Cuba)" and as the feminine form for "person
from Guantanamo (Cuba)."  Opposer's notice of reliance ex.
22.  Similarly, *Lema Diccionario De La Lengua Espanola* (1st
ed. 2001) defines "guantanamera" as "related to Guantanamo,
a Cuban locality, or to its inhabitants," and as the
feminine form for a "[person] who is from Guantanamo: *a
country girl from Guantanamo,*" and *Diccionario de la Lengua
Espanola, Real Academia Espanola* (3d ed. 2001) defines
"guantanamera" as "[a] native of Guantanamo" and
"[b]elonging to or related to this Cuban city or province."
Opposer's notice of reliance ex. 20 and ex. 21.

Professor Gonzalez,[4] opposer's expert, has testified
regarding the significance of the "era" ending in Spanish

---

[4] Professor Gonzalez was born in Cuba and is a tenured Professor
of Writing, Literature and Publishing at Emerson College, Boston,
Massachusetts, and is fluent in both Spanish and English.  The
focus of her academic research has been on Cuban literature and
culture, she has published numerous works on Cuban literature and
Cuban writers, and she has translated the works of Spanish
language authors into English.  Gonzalez dep. ex. 1.

Opposition No. 91152248

words.[5]   She testified that the "era" ending of

"guantanamera" is the standard form in Spanish to express

that a female is from a place that ends in a vowel:   "in

the Spanish language, usually when you are a person of a

certain city that ends in a vowel, you [add] the ero or era

ending … If you happen to be from Guantanamo, you are

Guantanamero or Guantanamera," in the same way that a New

Yorker is someone from New York.   Gonzales dep. at pp. 36 –

37.   According to Professor Gonzalez, who has taught

Spanish, this grammatical rule in Spanish is "common

knowledge" which is taught to middle and high school

students in the United States who are learning Spanish.

*Id*. at p. 37.[6]

Applicant argues "'Guantanamera' has a wide-spectrum

of meanings."   Brief at p. 29.   One meaning applicant

---

[5] Applicant's arguments regarding the weight to be accorded to
Professor Gonzalez's testimony set forth in applicant's
objections to opposer's notice of reliance are noted.  We do not
find any of such arguments particularly persuasive, and therefore
accord Professor Gonzalez's testimony full weight.  Specifically,
applicant has not established that Professor Gonzalez's testimony
is biased and we deem the sources she relied upon in arriving at
her opinions to be sufficient.  Further, applicant's contention
that she should have considered other meanings of "guantanamera"
understood by Cuban-Americans is not well taken; we do not
restrict our consideration of Section 2(e)(3) to Cuban-American
consumers of cigars, and applicant has not offered any evidence
to show that Spanish speaking consumers in the United States who
are not Cuban-Americans would know of such other meanings of
"guantanamera."
[6] Applicant's challenge to Professor Gonzalez's testimony on the
basis that she did not consult dictionaries which contain the
etymology of "guantanamera" or the multi-volume version of
*Diccionario de la Lengua Espanola* is not well taken; applicant
has not introduced any evidence from such dictionaries which

Opposition No. 91152248

relies upon is the third definition of "guantanamera" in
*Diccionario de la Lengua Espanola, Real Academia Espanola,*
namely, "coloq. *Cuba*. A harsh or impudent reprimand. *To
make, give, form, cause a guantanamera.*" As to this
definition, we find that it is not the primary meaning of
"guantanamera." First, this definition is not identified
as generally used in Spanish but is identified as a
colloquial Cuban term, and we do not consider only Cuban-
Americans in determining the meaning of "guantanamera."
Second, it would not be logical to give "guantanamera" the
"harsh or impudent reprimand" meaning when a more
appropriate meaning in the context of a cigar is a meaning
concerning the origin of the cigar or its tobacco.  Third,
Prof. Gonzalez, who has for many years studied the Spanish
language and Cuban literature, and has traveled to Cuba and
other Spanish-speaking countries, has testified that she
was not aware of the third definition in *Diccionario de la
Lengua Espanola, Real Academia Espanola,* prior to
consulting the dictionary. Gonzalez dep. at pp. 62 - 63.
We thus conclude that the meaning is not widely understood
or used among Spanish-speaking consumers of cigars in the
United States.

Applicant also relies on entries in *Diccionario Mayor
de Cubanismos* (1st ed. 1999) (translated as "The Great

---

contradict any materials that Professor Gonzales consulted or her

Dictionary of Cuban Expressions"), applicant's notice of reliance ex. 5, which contains the following expressions incorporating "guantanamera":

> No me mezcles en esa Guanta[na]mera [Don't get me mixed up in that mess.]

> Cantar hasta la Guantanamera. [Tell it all when one is stopped by the police.]

> Cantarle a alguien la Guantanamera. [To have died.]

> Meter una Guantanamera. [Make a terrible fuss with someone. Create a big ruckus.]

> Se algo una Guantanamera. [To be very tragic.]

The uses of "Guantanamera" in *Diccionario Mayor de Cubanismos* are all within multi-word expressions; applicant's mark is not part of an expression but is simply the single word "guantanamera." Thus, the expressions from *Diccionario Mayor de Cubanismos* are inapposite. Also, the evidence suggests that only Cubans and Cuban-Americans use these expressions, and, as noted above, we do not consider only Cuban-Americans in determining the meaning of "guantanamera." Further, Professor Gonzales testified that these expressions are "street expressions." Gonzalez dep. at p. 67; Gonzales dep. ex. 1 at ¶ 22. We hence conclude that they would not be widely known to Spanish-speaking consumers of applicant's goods.

---

testimony.

In addition, Mr. Montagne, applicant's president, has testified as follows regarding the meaning of "guantanamera"; "Guantanamera is a mess, it's a problem. It's a type of musical rhythm.  When someone dies they say you got the Guantanamera.  When your husband leaves you, you got the Guantanamera."  Applicant's notice of reliance ex. 1 (Montagne discovery dep. at p. 74).  His testimony is not persuasive in that the meanings he testifies to appear to be the same as or similar to those identified in the dictionary of Cuban expressions, which we do not find applicable in this case.  Also, with respect to those meanings that he has testified to and are not the same as the definitions listed in the dictionaries of record, his testimony is not corroborated by any documentary evidence. Further, Mr. Montagne has acknowledged that one definition of "guantanamera" is "a woman from Guantanamo."  *Id.*

We now consider applicant's contention that the primary meaning of GUANTANAMERA to the relevant public is a Spanish language folk song.  Brief at p. 29.  The evidence that has properly been made of record reflects that the band "The Sandpipers" recorded a version of the song "Guantanamera" which reached Number 9 on Billboard's popular music chart in 1966; that American folk singer Pete Seeger, who formed musical groups in the 1940s, recorded the song; that Celia Cruz, the "icon of Cuban music" and

"prominent singer for the Cuban-American community" sang "Guantanamera" in one of the scenes in the film *The Mambo Kings*; and that the song is widely know among the Cuban-American community.  Opposer's notice of reliance ex. 11 and 36; Gonzales dep. pp. 45 - 49 and Gonzales dep. ex. 1 at ¶ 11.  The song "Guantanamera" has been discussed in numerous articles in *The Miami Herald* and *The New York Times* and is the subject of certain webpages.  Opposer's notice of reliance ex. 14 and 15, and ex. 30, 31 and 38, which are subject to the parties' stipulation regarding the authenticity of certain evidence.  Further, Professor Gonzalez has stated in her expert report that "[b]ased on my experience, the word "Guantanamera" is most commonly known to the American public and the Cuban-American community in particular as one of the most famous traditional songs in Cuba, known worldwide, including in the United States."  Gonzalez dep. ex. 1, ¶ 10.

Despite this evidence, we are not persuaded that the consuming public would recognize the primary meaning of the mark in the context of applicant's goods as the song "Guantanamera."  First, evidence that the song was a hit fifty years ago, was sung by a folk singer from another era or was sung in one scene in a movie is of minor probative value regarding the notoriety of the song today.  Second, even if the song is well known in the United States, one of

the refrains in the song includes the phrase "guajira
guantanamera," which means "a country girl from
Guantanamo."   See *Lema Diccionario De La Lengua Espanola,*
opposer's notice of reliance ex. 21.  Thus, even if
consumers consider the mark as referring to the song by the
same name, such consumers, who know the song and who know
Spanish, will know of the geographic significance of
"Guantanamera" from the song's lyrics.  We agree with
opposer that the song actually reinforces the primary
significance of "guantanamera" as a generally known
geographic location.  Brief at p. 30.  Third, Professor
Gonzales' statement quoted above regarding the American
public's knowledge of the word "Guantanamera" actually
supports opposer's position, at least for those who know
Spanish; Professor Gonzales also testified that "[i]n the
song, 'Guantanamera' refers to a girl from Guantanamo."
Opposer's notice of reliance ex. 1 at ¶ 10.  Fourth,
applicant's goods are cigars, and the record reflects that
tobacco and cigars from certain countries, such as Cuba,
are more highly regarded than tobacco and cigars from other
countries.  From this, we can infer that U.S. consumers of
cigars, even those who know that Cuban goods cannot be sold
in the United States due to the U.S. embargo on Cuban
goods,[7] will have a heightened awareness of terms which

---

[7] As to such consumers, they will know of Cuban cigars due to

have a plausible geographic meaning.  In the context of
applicant's goods, consumers will ascribe the geographic
meaning to the mark rather than, as applicant suggests,
associate the mark with the title of a Spanish language
folk song.

As an alternative argument, applicant states "consumers
faced with Applicant's mark would conclude that the
trademark engendered a vague Spanish connotation," citing to
the Board's decision in *Conagra, Inc. v. Saavedra*, 4 USPQ2d
1245 (TTAB 1987).  In *Conagra*, the Board dismissed
plaintiff's claims that the mark TAPATIO was deceptive and
primarily geographically deceptively misdescriptive, even
though there was evidence that the term, used in connection
with a hot sauce, denoted people or things from Guadalajara,
Mexico.  Brief at pp. 29 - 30.  *Conagra* is inapposite
because in that case, "there [was] no evidence that even a
significant portion of the Spanish-speaking consuming public
recognizes 'tapatio' as a primarily geographical
designation."  *Id.* at p. 1249.  In the case before us, there
is significant evidence that Spanish-speaking consumers of

---

articles about Cuban cigars in U.S. magazines such as *Smoke*
magazine, Morejon ex. 10; and U.S. books such as *Shanken's Cigar
Handbook, A Connoisseur's Guide to Smoking Pleasure* (1997) ("Cuba
has a long tradition as the source of the best cigar tobacco …
Cuban cigar tobacco is still acknowledged by many as setting the
standard that the rest of the world follows"), opposer's notice
of reliance ex. 40.  They will also know about Cuban cigars
through their travels to foreign countries where Cuban cigars are
available for sale.

applicant's goods recognize GUANTANAMERA as a primarily geographical designation.

Applicant also argues that even if "'Guantanamera"' means a girl from Guantanamo, or things from or relating to Guantanamo, … there currently exists a wide spectrum of registered trademarks on the Federal Trademark Record which relate to a feminine adjectival form of a word." Applicant cites to THE GIRL FROM IPANEMA (Registration No. 2842768) for "swimwear, dresses, cover-ups, shorts, sarongs, skirts" and IPANEMA GIRLS (Registration No. 1697110) for "hostessing and cocktail waitressing services." Applicant's notice of reliance ex. 36. Applicant's citation to and reliance on these two registrations is not persuasive; the issue here is not whether a mark is unregistrable because the primary significance of the mark is a generally known geographic location; the issue is whether the mark is primarily geographically deceptively misdescriptive. Thus, a mark may be registered even if its primary significance is geographic, provided that there is no association between the place and the goods or services. See *In re Nantucket, Inc.*, 677 F.2d 95, 213 USPQ 889, 893 (CCPA 1982), ("geographically deceptive misdescriptiveness cannot be determined without considering whether the public associates the goods with the place which the mark names. If the goods do not come from the place named, and the public makes no

16

Opposition No. 91152248

goods-place association, the public is not deceived and the mark is accordingly not geographically deceptively misdescriptive.").

In view of the foregoing, we find that the primary meaning of the term "Guantanamera" is "of or from Guantanamo, Cuba" or "a female from Guantanamo"; that those consumers of cigars in the United States who speak Spanish would know that Guantanamo is a geographic location and recognize the meaning of "Guantanamera" as "of or from Guantanamo, Cuba" or "a female from Guantanamo"; and that this would be the case especially in the context of applicant's goods. The fact that the term is in the adjectival form of "Guantanamo" does not diminish the geographic significance of the term. See *In re Joint-Stock Co. "Baik"*, 80 USPQ2d 1305, 1310 (TTAB 2006)("The fact that BAIKALSKAYA is the adjectival form of a geographic term does not diminish its geographic significance"); *In re Jack's Hi-Grade Foods, Inc.*, 226 USPQ 1028 (TTAB 1985) (NEOPOLITAN is primarily geographically deceptively descriptive of sausage). The first element of the Section 2(e)(3) test therefore has been met.

b. *Goods-Place Association.*

As applied to this case, the second prong of the test requires proof that the public is likely to believe that applicant's cigars originate in Guantanamo, Cuba. *In re*

17

*Save Venice New York Inc.*, 259 F.3d 1346, 59 USPQ2d 1778, 1783 (Fed. Cir. 2001) ("Under this prong, we consider whether the public would reasonably identify or associate the goods sold under the mark with the geographic location contained in the mark.").

Mr. Morejon, opposer's commercial vice-president, has testified that tobacco is grown today in the region that is now the province of Guantanamo. Morejon dep. at p. 78. Other evidence establishes that the province of Guantanamo is part of the former province of Oriente, and that cigar consumers have been exposed to Oriente as a region in Cuba where tobacco is grown. See entry for "Guantanamo" from *The Columbia Gazetteer of North America* (2000), "[c]reated as one of five prov[ince]s out of old Oriente prov[ince]," opposer's notice of reliance ex. 11; *Perleman's Pocket Cyclopedia of Havana Cigars*, at p. 15 (Los Angeles, 3d ed. 2005), identifying tobacco growing areas "in the center of the island and from Oriente, located at the far eastern edge of Cuba," rebuttal notice of reliance ex. 2; *Cigar Aficionado*, "Guan-tan-a-mera. Oh! Guan-tan-a-mera," Sept. 3, 2002, by James Suckling, identifying tobacco growing areas in eastern Cuba, including "such tobacco areas as … Oriente," Morejon ex. 9; *Smoke,* "Cuba at the Crossroads" (Summer 2003 ed.) at p. 42, identifying tobacco from the "region of Oriente," Morejon ex. 10; and M. Shanken,

*Shanken's Cigar Handbook (Cigar Aficionado)*, *A Connoisseur's Guide to Smoking Pleasure* (1997) at pp. 110 - 111, "Cuba's finest tobacco-growing area is the legendary Vuelta Abajo, part of the Pinar del Rio region in western Cuba. Other Cuban cigar-tobacco-growing areas are … the Oriente and Remedios regions in the southeast," opposer's notice of reliance ex. 40. Also, Mr. Montagne has testified that Guantanamo Province is known as Oriente by many Cubans. Montagne testimonial dep. at p. 71, Montagne discovery dep. at pp. 68 - 69 ("[T]o me it's still Oriente [and] to many Cubans.").

Further, the record reflects that Cuba is renowned for its tobacco and cigars. *The New Encyclopaedia Britannica* (15th ed. 1988) states "[t]he quality products of the tobacco industry, notably Havana cigars, have brought Cuba word fame." Opposer's notice of reliance ex. 42. *The Columbia Gazetteer of North America* (2000) identifies cigars as one of five "important" exports from Cuba, and that such cigars contain "[h]igh-quality tobacco." Opposer's notice of reliance ex. 11. *The Encyclopedia Britannica* (2006) states that one of Cuba's main exports is "tobacco (notably cigars)." Opposer's notice of reliance ex. 41.

Applicant itself has sought to foster an association of its goods with Cuba. In early packaging bearing the mark, applicant falsely included the designation of origin,

"Guantanamera, Cuba." Montagne discovery dep. p. 128 and Montagne discovery dep. ex. 10 . On such packaging, applicant also included the false claims "Genuine Cuban Tobacco" and "Hecho Por Cubanos 100%" ("Made by Cubans 100%"), although applicant's cigars, which are sold in the United States, do not and legally cannot, contain genuine Cuban tobacco due to the United States' embargo on Cuban goods. Montagne discovery dep. ex. 10; Montagne testimony dep. at p. 25 (Q: "[Y]our cigars come from Honduras?" A. "Yes.") and pp. 139 - 141. Promoting this false goods-place association suggests that applicant intended consumers of its goods to make the same association of the goods with Cuba.

This evidence makes clear that consumers are likely to believe, and we therefore find, that there is a goods-place association between cigars and Guantanamo, Cuba. The second element of the Section 2(e)(3) test therefore has been met.

   c. The misrepresentation is a material factor in the consumer's decision to purchase the cigars.

The final prong of the three-part test requires proof that the misleading goods-place association is a material factor in the customer's decision to purchase applicant's cigars. Because opposer has established Cuba's renown and reputation for high-quality cigars, see evidence discussed above, we find that the goods-place association created by

20

Opposition No. 91152248

applicant's mark with Cuba is material in a consumer's decision to purchase applicant's cigars. Applicant evidently believed that the use of Cuban tobacco is a material factor in the decision to purchase a cigar because it included the false claim "Genuine Cuban Tobacco" on its product packaging. Accordingly, we find that the third element of the Section 2(e)(3) test has been met.

### Conclusion

Based on the evidence of record and for the reasons discussed above, we find that opposer has satisfied all of the three elements of its Section 2(e)(3) claim. The primary significance of applicant's mark is that of a generally known geographic place; there is a goods-place association, and applicant's goods will not come from the place named; and such goods-place association arising from use of applicant's mark would be material to the decision to purchase applicant's goods. We have considered all of applicant's arguments and evidence to the contrary, but are not persuaded that our conclusion is erroneous.

### Fraud

In view of our decision in opposer's favor regarding its Section 2(e)(3) claim, we need not and do not reach opposer's pleaded claim of fraud.

**Opposition No. 91152248**

**DECISION:**  The opposition based on Section 2(e)(3) of the Trademark Act is sustained and registration to applicant is refused.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.

GUANTANAMERA CIGAR CO.,
A Florida Corporation,

      Plaintiff
(appellant of TTAB decision),
v.

CORPORACION HABANOS, S.A.
A Cuban Entity Jointly Owned by the
Cuban Government and a Spanish Entity
Known as Altadis, S.A.

      Defendant
(appellee of TTAB   decision).
_____/

**Appeal from
TTAB
Opposition No.
91152248**

# **EXHIBIT B**

1

THIS OPINION IS
NOT A PRECEDENT
OF THE T.T.A.B.

Mailed:
February 29, 2008

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

Corporacion Habanos, S.A.

v.

Guantanamera Cigars Company
_____

Opposition No. 91152248 to application
Serial No. 76256068 filed on May 14, 2001
_____

David B. Goldstein of Rabinowitz, Boudin, Standard, Krinsky
& Lieberman, P.C. for Corporacion Habanos, S.A.

Frank Herrera of Frank Herrera, P.A. for Guantanamera Cigars
Company.
_____

Before Hairston, Zervas and Cataldo, Administrative
Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:


    In a separate decision, we have decided the merits of

opposer's Trademark Act Section 2(e)(3), 15 U.S.C.

§ 1052(e)(3), claim asserted in this case.  In this order,

we rule on the numerous objections made by each party to the

other's evidence submitted by notice of reliance.  We have

opted to issue a separate order because of the large number

of evidentiary objections.

Opposition No. 91152248

*Opposer's Evidentiary Objections*

We rule as follows on opposer's objections to applicant's

exhibits submitted with applicant's notice of reliance.[1]

a.  Exhibit 1.  After opposer submitted portions of Mr.
    Montagne's discovery deposition with its notice of
    reliance, applicant submitted Mr. Montagne's entire
    discovery deposition.  Applicant did not indicate why
    in fairness the entire deposition should be
    considered so that opposer's submission would not be
    misleading.  See Trademark Rule 2.120(j)(4), 37
    C.F.R. §2.120(j)(4).  Applicant also did not submit
    any of the exhibits to Mr. Montagne's discovery
    deposition.  In order to correct any misimpressions
    created by the portions of Mr. Montagne's testimony
    submitted by opposer, such as with respect to any
    meaning of the term "guantanamera" not favorable to
    opposer, and because opposer submitted many of the
    deposition exhibits with its notice of reliance, we
    exercise our discretion as permitted by Trademark
    Rule 2.120(j)(4) and consider Mr. Montagne's entire
    discovery deposition.  Opposer's objection is
    overruled.

b.  Exhibit 2.  Opposer's objection to applicant's
    submission of less than the entire file history of
    the application involved in this proceeding is
    overruled; the file history of applicant's
    application is automatically of record pursuant to
    Trademark Rule 2.122(b), 37 C.F.R. §2.122(b).

c.  Exhibits 6, 7, 8, 13, 25, 32, 38 and 40.  Opposer's
    objections to various Internet printouts are
    sustained because such printouts may not be
    authenticated through the notice of reliance
    procedure.  Applicant has not authenticated them
    through the testimony of a person who can properly
    authenticate and identify the materials.  See TBMP
    § 704.08 (2d ed. rev. 2004); *Alfacell Corp. v.
    Anticancer Inc.*, 71 USPQ2d 1301, 1302 n.3 (TTAB
    2004).

---

[1] We have not received a response from applicant regarding the
objections made by opposer to applicant's evidence.  Thus, while
we have not treated opposer's objections as conceded, we have
ruled on opposer's objections without the benefit of any
arguments by applicant on the propriety of opposer's objections.

Opposition No. 91152248

d.  Exhibit 9.  Opposer's objection to applicant's
    submission of applicant's supplemental responses to
    opposer's first set of interrogatories is sustained;
    except under one limited circumstance which is
    inapplicable here, a party may not introduce its own
    responses to discovery requests by a notice of
    reliance.  Trademark Rule 2.120(j)(5), 37 C.F.R.
    § 2.120(j)(5).

e.  Exhibits 10 and 34.  Opposer's objection to both
    exhibits is sustained because applicant has not
    provided a translation of these exhibits which are in
    Spanish.  Opposer's objection to Exhibit 34 is also
    sustained because it comprises a brochure, and there
    is no evidence that the brochure is available to the
    general public in libraries or of general circulation
    among members of the public.  Trademark Rule
    2.122(e), 37 C.F.R. § 2.122(e); *Daggett & Ramsdell,
    Inc. v. Procter & Gamble Co.*, 275 F.2d 955, 125 USPQ
    236, 238 (CCPA 1960).

f.  Opposer's objection on the grounds of relevance to
    (a) certain third-party registrations from the
    Office's TESS database submitted as Exhibits 11, 12,
    16, 35 and 36, and (b) pages from an English language
    dictionary to show that "guantanamera" is not in the
    dictionary, submitted as Exhibit 33, are overruled.
    We have given, however, appropriate weight to the
    registrations and the dictionary pages in our
    deliberations.

g.  Exhibit 28.  Opposer's objection to copies of
    photographs of applicant's goods is sustained; the
    Trademark Rules do not allow for the introduction of
    such evidence pursuant to a notice of reliance.

h.  Exhibits 37 and 39.  Opposer's objection is
    sustained; these exhibits consist of two declarations
    which were submitted with the summary judgment
    motions.  Evidence submitted in connection with a
    summary judgment motion is of record only for
    purposes of that motion.  To be considered at final
    hearing, the evidence must be properly introduced
    during the appropriate testimony period.  See TBMP
    § 528.05(a) (2d ed. rev. 2004).  Further, although
    Trademark Rule 2.123(b), 37 C.F.R. § 2.123(b),
    provides in relevant part that "[b]y written
    agreement of the parties, the testimony of any
    witness or witnesses of any party, may be submitted
    in the form of an affidavit by such witness or

3

Opposition No. 91152248

witnesses," no stipulation has been submitted to allow opposer to submit the testimony of its witnesses by affidavit or declaration.

*Applicant's Evidentiary Objections*

We rule as follows on applicant's objections to thirty-two of opposer's exhibits submitted with opposer's notice of reliance:

a. Objections to evidence based on relevancy are overruled; unless the evidence is subject to another objection which we have sustained, we have given the evidence appropriate weight in our deliberations.

b. Objections regarding evidence for which applicant has waived any objection based on authentication in the stipulation filed on September 25, 2006 are overruled because of applicant's waiver.

c. Objections based on hearsay are overruled because opposer's exhibits have not been offered for the truth of the matters contained therein, or because applicant has not explained the basis for its objection.

d. Objections to the extent that documents come from the Wikipedia website are overruled. See *In re Total Quality Group, Inc.*, 51 USPQ2d 1474, 1475-1476 (TTAB 1999) (providing that the weight given to information retrieved from the Internet must be carefully evaluated because the source is often unknown); *In re IP Carrier Consulting Group*, 84 USPQ2d 1028, 1032 (TTAB 2007) ("the Board will consider evidence taken from Wikipedia so long as the non-offering party has an opportunity to rebut that evidence by submitting other evidence that may call into question the accuracy of the particular Wikipedia information"). We have given the Wikipedia documents the weight they are due.

e. Objections regarding evidence submitted with opposer's notice of reliance which is duplicative of evidence submitted as an exhibit to a testimony deposition or which is in the record by operation of the Trademark Rules are overruled.

Opposition No. 91152248

Additionally, applicant's objections to the following exhibits are overruled: (a) Exhibit 9, opposer's application for the mark GUANTANAMERA, because applicant has relied on it in arguing that a translation of the term was not needed in applicant's application; (b) Exhibit 10, because it is also an exhibit to Mr. Morejon's deposition; (c) Exhibit 11, online entries from *The Columbia Gazetteer* (other than the entry regarding Pete Seeger, which is discussed below), because *The Columbia Gazetteer* is a standard reference work; (d) Exhibit 20, a definition from a Spanish language dictionary, because a corrected copy of the entire exhibit has been filed with applicant's consent and the corrected copy contains an English translation; (e) Exhibit 18, because opposer indeed has included a statement identifying the document in its notice of reliance in accordance with Trademark Rule 2.122(e); and (f) Exhibits 21 and 22 because the exhibits are from a Spanish language dictionary and opposer's claims involve the meaning of a Spanish word.

The following objections are sustained:

a. Applicant's objection to (a) Exhibit 28, a document from reference.com showing an entry for "Guantanamo," and (b) the second document in Exhibit 38 entitled "Mambo Kings" from wikipedia.org, because web pages are not self-authenticating and opposer has not contended these documents are subject to the stipulation between the parties regarding authentication.

b. Applicant's objections to Exhibits 4 and 8, because opposer has not provided a statement indicating the

Opposition No. 91152248

relevance of the exhibit as required by Trademark Rule 2.122(e).

c. Applicant's objection to the entry from the online version of *The Columbia Encyclopedia* for "Pete Seeger," one of five entries from *The Columbia Gazetteer* or *The Columbia Encyclopedia* submitted as a part of Exhibit 11, because opposer did not list this document in its notice of reliance.  Trademark Rule 2.122(e).  We do, however, take judicial notice of this entry for "Pete Seeger."  See *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc.*, 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *In re CyberFinancial.Net Inc.*, 65 USPQ2d 1789, 1791 n.3 (TTAB 2002).

In addition, we do not consider opposer's notice of reliance exhibit 43, which applicant has not objected to; the notice of reliance procedure does not extend to such evidence (a dvd containing an excerpt of the song entitled "Guantanamera" sung by Pete Seeger and excerpts from two movies.)

-oOo-

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.

GUANTANAMERA CIGAR CO.,
A Florida Corporation,

     Plaintiff
(appellant of TTAB decision),
v.

CORPORACION HABANOS, S.A.
A Cuban Entity Jointly Owned by the
Cuban Government and a Spanish Entity
Known as Altadis, S.A.

     Defendant
(appellee of TTAB   decision).
_____/

**Appeal from
TTAB
Opposition No.
91152248**

# <u>EXHIBIT C</u>

1

| SEARCH BLOG | | FLAG BLOG | Next Blog»                    Create Blog | Sign In

# The TTABlog®

## *Keeping Tabs on the TTAB®*

by John L. Welch

**TUESDAY, MARCH 11, 2008**

### Precedential No. 12: TTAB Sustains 2(e)(3) Opposition to "GUANTANAMERA" for Non-Cuban Cigars, Folk Song Notwithstanding

Rejecting Applicant's claim that the primary meaning of GUANTANAMERA to the relevant public is the well-known Spanish folk song, the Board sustained an opposition to registration of that mark for cigars on the ground that it is primarily geographically deceptively misdescriptive under Section 2(e)(3). *Corporacion Habanos, S.A. v. Guantanamera Cigars Co.*, Opposition No. 91152248 (February 29, 2008) [precedential].



Opposer's cigars

The Board first found that Opposer, a Cuban company subject to the U.S. embargo on Cuban goods, has standing to bring the opposition. Opposer submitted a letter from the U.S. Treasury Department "confirming that Cuban entities are permitted under Section 515.527 of the Cuban Assets Control Regulations, 31 C.F.R. Part 515, to 'file an opposition to the registration of a new trademark ... where these

## About Me



John L. Welch

Lowrie, Lando & Anastasi, LLP

## Recent Articles

Unfriendly Shores? Recent Developments in U.S. Law May Trouble Foreign Trademark Owners (with Ann Lamport Hammitte)

The Top Ten TTAB Decisions of 2007®

TTAB 2007 Update: *Rules, Rulings, and Repercussions* (with Ann Lamport Hammitte)

Fraud for Thought: *Can Fraud be Avoided by Correcting a False Statement Prior to Publication?* (with Ann Lamport Hammitte)

The TTAB in 2006: *The Good, the Bad, and the Ugly*

The Top Ten TTAB Decisions of 2006® [Part 1 of 2]

The Top Ten TTAB Decisions of 2006® [Part 2 of 2]

The TTAB and Foreign Website

actions relate to the protection of a trademark in which Cuba ... has an interest." Moreover, Opposer had filed its own application to register the same mark for cigars.

Opposer's Section 2(e)(3) claim required proof that (a) the primary significance of GUANTANAMERA is a generally-known geographic location; (b) the consuming public is likely to believe that the place identified by the mark GUANTANAMERA is the origin of the goods bearing the mark (i.e., that a goods-place association exists), when in fact the goods do not come from that place; and (c) the misrepresentation would be a material factor in the consumer's decision to purchase the goods.

As to the first prong of the test, the Board found that the primary meaning of the term "Guantanamera" is "of or from Guantanamo, Cuba" or "a female from Guantanamo"; that cigar consumers in the United States who speak Spanish would know that Guantanamo is a geographic location and would recognize that meaning; and that this would be especially true in the context of Applicant's goods.

As to the second prong, the Board found that consumers are likely to believe that there is a goods-place association between cigars and Guantanamo, Cuba. The evidence indicated that tobacco is grown in the Guantanamo region and that Cuba is renowned for its tobacco and cigars. Applicant itself attempted to "foster an association with Cuba" by falsely stating in its early packaging that its product originated in "Guantanamera, Cuba" and that it contained "Genuine Cuban Tobacco."

As to the third and final prong, because Opposer established "Cuba's renown and reputation for high-quality cigars," the Board found that "the goods-place association created by applicant's mark with Cuba is material in a consumer's decision to purchase applicant's cigars." The Board noted that "Applicant evidently believed that the use of Cuban tobacco is a material factor in the decision to purchase a cigar because it included the false claim 'Genuine Cuban Tobacco' on its product packaging."

In reaching its conclusion, the Board rejected Applicant's argument that "Guantanamera" has a "wide-spectrum of meanings" and appears in a number of colloquial expressions (e.g., *Meter una Guantanamera*, meaning "Create a big ruckus"). These Cuban expressions, according to the Board, would not be widely know to Spanish-speaking consumers of Applicant's goods.

Applicant also urged that the primary meaning of GUANTANAMERA to the relevant public is the well-known Spanish language folk song of that name. Opposer's own expert stated that "the word 'Guantanamera' is most commonly known to the American public and the Cuban-American community in particular as one of the most famous traditional songs in Cuba, known worldwide, including in the United States." Nonetheless, the Board was not persuaded that, in the context

*Evidence: Quo Vadis?* (with Ann Lamport Hammitte)

*The Top Ten TTAB Decisions of 2005*

*The Ten Worst TTAB Decisions of 2005?*

*The Top Ten TTAB Decisions of 2004*

*The TTAB in 2004: What Was Hot, What Was Not*

*2004 at the TTAB: 12 Citables and 3 Precedential CAFC Decisions*

*Six Potential Pitfalls in Trademark Prosecution*

*Trade Dress and the TTAB*

*The Top Ten TTAB Decisions of 2003*

*The TTAB in 2003 [Part I]*

*The TTAB in 2003 [Part II]*

*Dilution at the TTAB*

*TTAB Practice and the Madrid Rule Changes* (with Ann Lamport Hammitte)

*The Top Ten Losing TTAB Arguments*

**TTABlog Archives**

November 2004

December 2004

January 2005

February 2005

March 2005

April 2005

May 2005

June 2005

July 2005

August 2005

September 2005

October 2005

November 2005

December 2005

January 2006

of Applicant's goods, the primary meaning of the mark GUANTANAMERA would be the song. [TTABlog comment: note that the above photograph of Opposer's cigars include a guitar design that presumably is intended to call to mind the folk song].

---

"[O]ne of the refrains in the song includes the phrase 'guajira guantanamera,' which means 'a country girl from Guantanamo.' *** Thus, even if consumers consider the mark as referring to the song by the same name, such consumers, who know the song and know Spanish, will know the geographical significance of 'Guantanamera' from the song lyrics."

---

Moreover, because Cuban cigars are highly regarded in this country, U.S consumers of cigars will have a "heightened awareness of terms which have a plausible meaning." With regard to cigars, they will "ascribe the geographic meaning to the mark rather than, as applicant suggests, associate the mark with the title of a Spanish language folk song."

And so the Board sustained the opposition.

The Board dealt with many evidentiary objections in a second and separate ruling (here) issued on the same day as its substantive opinion.

TTABlog further comments: Note that the Board distinguishes between three groups of U.S. consumers: those of Cuban extraction (who would recognize the Cuban idioms); Spanish-speaking consumers (who would understand the lyrics of the song as referring to Guantanamo); and others (who, like me, would think only of the song without realizing that it had anything to do with Guantanamo, Cuba).

A knowledgeable reader suggests that the splitting of the substantive ruling from the ruling on evidentiary matters may be a first for the Board. Moreover, she asks, why is one ruling precedential and the other not? Did the Board just not want to stick the "precedential" label on its rather mundane evidentiary rulings? Will future readers of the "precedential" decision be able to readily find the "non-precedential" ruling?

Text Copyright John L. Welch 2008.

posted by John L. Welch @ 3/11/2008                                

<< Home

February 2006
March 2006
April 2006
May 2006
June 2006
July 2006
August 2006
September 2006
October 2006
November 2006
December 2006
January 2007
February 2007
March 2007
April 2007
May 2007
June 2007
July 2007
August 2007
September 2007
October 2007
November 2007
December 2007
January 2008
February 2008
March 2008






CS-721
RCL

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Guantanamera Cigars Company     88888 | Corporacion Habanos, S.A. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Miami-Dade, Fl. | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    REP. of CUBA |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | |
|---|---|
| Lisa Kaufman, Esq., 3408 Rebecca Jane Way, Alexandria, VA 22310 -(703) 960-0805 and Frank Herrera, 401 E. Las Olas Blvd., Suite 1650, Ft Lauderdale, Florida - (954) 522-3456 | Case: 1:08-cv-00721 Assigned To : Lamberth, Royce C. Assign. Date : 4/25/2008 Description: Admn. Agency Review |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

⊙ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ⊙ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ⊙ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

⊙ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**     **OR**     ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
15 U.S.C. 1071(b)(4) Appeal from Decision of United States Patent and Trademark Office's Trademark Trial and Appeal Board

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** [_____]   Check YES only if demanded in complaint   **JURY DEMAND:**   YES ☐   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  April 24, 2008 / 25    SIGNATURE OF ATTORNEY OF RECORD  _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.