IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **GUANTANAMERA CIGAR CO.** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-0721 (RCL) |
| **CORPORACION HABANOS, S.A.** | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Before the Court at this time are defendant's Motion to Preclude, to Compel, and for Sanctions [19], plaintiff's Motion for Leave to Amend the Complaint and to Modify the Scheduling Order [25], defendant's Motion for Protective Order and to Quash [30,31], and defendant's Motion to Enlarge the Time for Completing Expert Disclosures [44]. Since all of these motions deal with the unnecessarily adversarial and litigious discovery process in this case, the Court will treat them together in one opinion. Upon consideration of the above motions and responsive filings, the applicable law and the record herein, for the reasons set forth below, all of the motions will be **GRANTED**.

**I. Background**

This case comes before the Court following a denial by the Trademark Trial and Appeal Board ("TTAB") of plaintiff Guantanamera Cigar Company's application for a U. S. trademark on February 29, 2008. Defendant Corporacion Habanos, S.A. had opposed the application, and the TTAB found plaintiff's Guantanamera mark geographically deceptively misdescriptive. 86 U.S.P.Q.2d 1473, 1479 (T.T.A.B. 2008). Plaintiff brought a civil action and appeal of the TTAB

1

decision in this Court shortly thereafter, and the ensuing year of litigation has been marred by a significant lack of cooperation between the parties in the discovery process.

Plaintiff's initial disclosures, the first subject of contention, contained categories of potential witnesses, with no names or addresses, that could contain thousands of possible persons or companies. (Def.'s Mot. to Preclude Ex. B at 2-3.) In its production of documents, plaintiff purported to narrow these categories by providing industry lists of thousands of cigar retailers and distributors. (Pl.'s Resp. Ex. D-E.) Plaintiff further identified, in Responses to Interrogatories on December 4, 2008, fifty-six potential witnesses that represented some, but not all, of the persons in the previously disclosed categories.[1] (Def.'s Mot. Ex. E at 2-8.) Defendant moves to preclude plaintiff from using any witnesses from those large categories because of plaintiff's failure to adhere to the reasonable inquiry and specificity requirements of the Federal Rules. Defendant also moves to compel responses to various interrogatories and document requests which plaintiff failed to respond to even after the entry of a Protective Order it requested. (Def.'s Mot. 5.)

Concurrent with its response to defendant's Motion to Preclude—wherein plaintiff consented to respond to most interrogatories and urged against preclusion since discovery had not yet closed at that time—plaintiff filed a Motion for Leave to Amend the Complaint and to Modify the Scheduling Order. Back in February of this year, upon learning that defendant Habanos had begun advertising its brand of Guantanamera cigars in the U.S., plaintiff filed a separate suit in the Southern District of Florida for trademark infringement and unfair

---

[1] When listing the 56 specific witnesses, plaintiff's responses noted that the larger categories "include, *but are not limited* to" those specific persons or companies.

competition.[2] (Pl.'s Mot. 5.) Plaintiff now seeks to amend its complaint to consolidate these two actions, to flesh out its appeal of the TTAB decision with new law, and to modify the scheduling order to account for discovery on these new issues. Defendant consents to the amendment, but urges the court to stay discovery on the new claims until after dispositive motions have been filed and decided as to the TTAB appeal. (Def.'s Mem. in Resp. 6.) The discovery process has started in the Southern District of Florida case, with motions pending. (Notice re Status of Action [41].)

Finally, the most recent motion before the Court is defendant's Motion for Protective Order and to Quash Deposition Subpoena of Opposing Counsel Debra Evenson. Ms. Evenson is an attorney in defense counsel's law firm and has worked closely on defendant's case in the TTAB proceeding and this action. (Def.'s Mot. 3.) Plaintiff seeks to depose her about her relationship with defendant's expert Flora Gonzales and about her expertise on the Cuban legal system. (Pl.'s Opp'n *passim*.)

## II. Amending the Complaint and Modifying the Scheduling Order

This Court "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Though the Court remains puzzled as to why plaintiff did not seek leave to amend in this Court back in February, instead of filing a separate action, this peculiar error in judgment does not negate the consent of defendant and the obvious efficiency of having all related claims litigated in one forum. And though the Court agrees with defendant that "there is plainly no need for Plaintiff to amend its *complaint* to make legal arguments addressing [the *In re Spirits Int'l, N.V.*] decision" (Def.'s Mem. in Resp. n.2), there is just as plainly no reason to

---

[2] The deadline for amending pleadings had passed in this Court, so plaintiff filed a separate action in Florida. The Court wonders why plaintiff thought the Court would not grant leave to amend back in February, but will do so now as discovery is about to close on the existing claims.

forbid plaintiff from fleshing out its claims in light of the Court's decision to allow amendment. Thus, the Court will allow plaintiff to file its Second Amended Complaint.

The Court will also amend the Scheduling Order as requested by plaintiff, utilizing the dates contained in plaintiff's motion at page 9, pursuant to Fed. R. Civ. P. 16(b). In light of the Court's decision regarding defendant's Motion to Preclude, detailed below, discovery will have to be extended anyway[3], making the proposed dates appropriate. As to the scope of additional discovery, the Court agrees with defendant that it would make more sense to stay discovery on the trademark infringement issues until after dispositive motions have been filed as to whether plaintiff has a valid trademark. "To prevail on a claim of trademark infringement in the D.C. Circuit, 'the plaintiff must show (1) *that it owns a valid trademark . . .*" *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 26-27 (D.D.C. 2006) (emphasis added). However, because additional discovery on the matters in the Original Complaint will likely follow the issuance of this opinion due to the Court's rulings on the Motion to Preclude, efficiency requires that the matters in the Second Amended Complaint be addressed at the same time. The 15 deponents from plaintiff's Initial Disclosures would have to be re-noticed later in the proceedings if plaintiff's claims survive dispositive motions, so fairness requires that all possible questions be asked of those 15 deponents at one time, for their sake. Thus, the Court will allow discovery on the claims of trademark infringement and unfair competition contained in the Second Amended Complaint. All additional discovery, however, with the exception of the discovery compelled or contemplated in the Court's ruling on the Motion to Preclude, shall be limited to the issues of infringement, unfair competition and dilution. Plaintiff will not be

---

[3] The Court will compel responses to interrogatories and document requests, as well as allow up to 15 depositions of potential witnesses listed in plaintiff's Initial Disclosures.

allowed to continue belated discovery on the issue of geographic misdescriptiveness.[4] The parties will also file, within 15 days of the issuance of this opinion, motions regarding the dispute in the Southern District of Florida over the depositions of Augusto Lopez, Eva Maria Lopez, and Oliver Spirits & Liqueurs, Inc. so that this Court may determine whether those depositions shall be permitted in this case.

### III. Motion to Preclude, Compel and for Sanctions

#### a. Initial Disclosures

Rule 26(a)(1) requires parties to provide initial disclosures which include "the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26(g) requires that all signed disclosures be based on "belief formed after a *reasonable inquiry*." Fed. R. Civ. P. 26(g)(1). Likewise, "a party is not excused from making its disclosures because it has not fully investigated the case . . ." Fed. R. Civ. P. 26(a)(1)(E). The 1993 Advisory Committee Notes make it clear that the purpose of these disclosures is to "assist other parties in deciding which depositions will actually be needed." When a party provides evasive or incomplete disclosures—treated as a failure to disclose under Rule 37(a)(4)—a party may move to compel further disclosures and for sanctions under Rule 37(a)(3)(A), and a court may preclude the use of any witnesses not identified in initial disclosures, under Rule 37(c)(1).

Clearly, plaintiff's initial disclosures of persons it may use to support its claims were evasive and entirely out of touch with the spirit of the Federal Rules. By no stretch of the

---

[4] The Court recognizes that plaintiff may wish to take additional discovery concerning the materiality factors in a deceptively misdescriptive trademark newly clarified in *In re Spirits International*, but feels that the 15 depositions allowed below will serve that very purpose. Any evidence, beyond those depositions, of the makeup of plaintiff's consumer base should be available through plaintiff's own records and testimony and not require additional discovery.

imagination can it be said that plaintiff made those disclosures after a reasonable inquiry, nor did defendant at any time in the discovery process have enough information to know which depositions would actually be needed. Plaintiff argues that in its Responses to Interrogatories it narrowed its list of potential witnesses to 56, and that with five months of discovery remaining defendant could have deposed all of them. (Pl.'s Resp. 12-13.) However, those responses clearly indicated that the 56 names provided constituted some, but not all of the potential witnesses plaintiff might use. *See* fn. 1, *supra*. Without assurances from plaintiff that it would limit itself to those 56 witnesses, and unable to predict this Court's ruling on these matters, defendant would have been foolish to proceed with 56 potentially-ineffective depositions. For all intents and purposes, plaintiff did not guarantee that it would limit itself to those 56 witnesses until the filing of its response to this motion on May 12, 2009, 3 weeks before the close of discovery.

Now, because discovery had not yet closed when the Motion to Preclude was filed, and because of the importance of the testimony at stake, the Court will not preclude all evidence or witnesses referred to in categories 1b, 1c, 1h, 1i, or 1j of plaintiff's Initial Disclosures (Def.'s Mot. Ex. B at 2-3). While the sanction of preclusion may in some sense be "automatic" as defendant contends, the Rule also provides that the Court, instead, "may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C). The importance of the testimony is an important consideration in deciding whether to preclude it or not. *Gibson v. Nat'l R.R. Passenger Corp.,* 176 F.R.D. 190, 192 (E.D. Pa.1997). All of the above-listed categories of witnesses could provide testimony about the consumers of plaintiff's cigars and the impressions and makeup of those consumers, and such testimony is critical to both parties' positions. Thus, preclusion is not appropriate here.

However, even though discovery had not yet closed in this case at the time of this motion, "[a] party is not permitted to postpone identification of its own witnesses and the substance of their testimony until a critical point in the proceedings at which it will become extremely burdensome for his opponent to prepare effectively to meet them." *Perkasie Indus. v. Advance Transformer, Inc.*, 143 F.R.D. 73, 76-77 (E.D.Pa.1992). This Court has acknowledged that "it is easy to imagine a case where the number of potential witnesses is great . . . and the time to take depositions limited. In such a situation, the tentative disclosure of potential witnesses may be appropriate." *D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43, 54 (D.D.C. 2008). In another case, the Court extended the discovery deadline and allowed additional depositions to account for the large number of potential witnesses and short amount of time. *Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, No. 03-CV-2006, 2007 WL 4916959, at *1 (D.D.C. Dec. 18, 2007). In the *Sender* case, cited by defendants, the court allowed 20 additional depositions after the close of discovery, subsidized in part by the party who had served deficient initial disclosures. *Sender v. Mann*, 225 F.R.D. 645, 657-58 (D. Colo. 2004).

Though the timing of the motion in this case most resembles the situation envisioned by *D'Onofrio*, this Court feels that a number of aggravating factors warrant a result like *Sender*'s. First of all, though discovery had not yet closed when plaintiff effectively narrowed its initial disclosures to 56 witnesses, discovery had been open for almost one year (from plaintiff's Initial Disclosures on August 11, 2008 until its Response to Defendant's Motion to Preclude on May 12, 2009), during which time plaintiff's initial disclosures remained extremely deficient. As in *Sender*, plaintiff failed to make a reasonable inquiry and instead provided "a laundry list of undifferentiated witnesses." *Sender*, 225 F.R.D. at 651. Plaintiff only expressly limited itself to 56 witnesses after the filing of defendant's motion. The fact that defendant's counsel asked for

more specific initial disclosures as early as August 18, 2008 (Def.'s Mot. Ex. G), combined with the unlikelihood that plaintiff's counsel truly misunderstood the discovery rules so egregiously as to think that a disclosure of thousands of potential witnesses was acceptable,[5] leads the Court to believe that plaintiff acted in bad faith. Had defendant not filed this motion, plaintiff would likely have continued to ignore its initial disclosure obligations, and when it produced its witness list in pre-trial disclosures, the facts of this case would be identical to those in *Sender*.[6] This Court would be justified, at that time, in ordering plaintiff to pay for the depositions of those witnesses, as in *Sender*, so the Court sees fit to preempt that decision by its holding today. Furthermore, since the purpose of sanctions is to deter similar conduct in the future, *see Sender*, 225 F.R.D. at 657 (citing *Hite v. The PQ Corp.,* No. 98-2088, 1998 WL 895893, at *2 (D. Kan. 1998)), something more than an extension of discovery deadlines is needed. Merely extending the discovery deadline and allowing depositions would only benefit plaintiff, who already wants additional discovery time anyway and would benefit from depositions of their own witnesses, and there would be no deterrent effect.

Based on these conclusions, the Court will order plaintiff to provide to defendant, within 5 days, a list of either (1) all the persons (of the 56 contained in the Responses to Interrogatories) that plaintiff has actually interviewed concerning this case,[7] or (2) any 15 of the witnesses from categories 1b, 1c, 1h, 1i, or 1j of plaintiff's Initial Disclosures, whichever list is longer. Plaintiff will be precluded from the use of any other witnesses from categories 1b, 1c, 1h, 1i, and 1j of the

---

[5] Though their response indicates a "good faith belief that every one of the [thousands of] individuals identified would have some knowledge relevant to the instant dispute." (Pl.'s Resp. 12.)

[6] The party with deficient initial disclosures in *Sender* produced a trial witness list containing 20 names that had been listed in initial disclosures undifferentiated among hundreds of others. The Court allowed the other party to depose all of the trial witnesses, since proper initial disclosures would have allowed the other party to discern the importance of the witnesses eventually called to testify at trial. 225 F.R.D. at *passim*.

[7] Various courts have compelled a list of persons interviewed by a party in situations like this, despite minor work-product concerns. *See Kidder v. Tidewater Marine, LLC*, No. 05-1152, 2007 WL 37954, at *2 (W.D. La. Jan. 5, 2007); *Computer Assoc. Int'l, Inc. v. Quest Software, Inc.*, No. 02 C 4721, 2003 WL 22159022, at *1 (N.D. Ill. Sept. 17, 2003); *In re Aetna Inc. Sec. Litig.*, No 1219, 2009 WL 1619636, at *2 (E.D. Pa. May 26, 1999).

Initial Disclosures, and will pay defendant's reasonable expenses for depositions of up to 15 of those witnesses, up to $500 per deposition. Plaintiff will also pay defendant's reasonable attorney's fees for the filing of the Motion to Preclude and the Reply, as stated above.

### b. Responses to Interrogatories and Requests for Production

The Federal Rules of Civil Procedure encompass a "broad presumption… in favor of discovery." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1349 (D.C. Cir. 1984). Rule 33(b)(3) provides that each interrogatory "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "A party to whom an interrogatory is propounded 'must provide true, explicit, responsive, complete, and candid answers.'" *Equal Rights Ctr v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) (citing *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996)). If a party fails to answer an interrogatory in response to a Rule 33 discovery request, the Court may compel a response. Fed. R. Civ. P. 37(a)(3)(B)(iii). "[A]n evasive or incomplete… response must be treated as a failure to… respond." Fed. R. Civ. P. 37(a)(4). The party moving to compel discovery has the burden of proving that the opposing party's interrogatory answers were incomplete. *Equal Rights Ctr.*, 246 F.R.D. at 32 (citing *Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976); *U.S. ex rel. El-Amin v. George Washington Univ.*, 2000 WL 1763679, *1 (D.D.C. 2000)).

Because plaintiff has apparently agreed to comply, and defendant has conceded its motion, as to Document Requests 5, 6, 9 and 10 and Interrogatories 11 and 12, the Court only needs to address Document Requests 12 and 13 and Interrogatory 7. The Court does note, as to plaintiff's repeated assertions that it is a "mom and pop" establishment, that plaintiff may not seek redress in this Court and then claim it is not sophisticated enough to comply with its obligations in this Court. If plaintiff's records are inadequate to respond to defendant's requests,

then plaintiff must say so or respond to the best of its ability rather than simply fail to answer for months as it has done in this action.

### Interrogatory No. 7

Plaintiff is bound by its representations in its Response to Defendant's Motion to Preclude as to Interrogatory 7 (Pl.'s Resp. 8).

### Document Request No. 12

The maintenance of plaintiff's website/s, used by plaintiff for marketing purposes and to sell cigars, is clearly relevant to this case and a determination of the target consumers of plaintiff's cigars. The discovery rules require a party to respond to an interrogatory "separately and fully in writing under oath." Fed. R. Civ. P. 30(b)(3). Plaintiff cannot meet its obligations by saying that defendant can find the information itself, as it has done. (Pl.'s Resp. 6.) Whether or not deposing plaintiff's web developer or looking up the current metatags on their own web browser will aid defendant in finding the requested information, plaintiff must still provide all documents and information it has in its possession. The Court doubts that plaintiff has absolutely no records whatsoever concerning what appears to be a rather sophisticated website, and the Court will order plaintiff to supplement its response to Document Request 12.

### Document Request No. 13

In light of the imminent filing of plaintiff's Second Amended Complaint, and the new claims contained therein, the information requested in Document Request 13 has become relevant to this action, and plaintiff will be compelled to respond to that request.

**IV. Motion for Protective Order and to Quash**

A party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... [or which] appears reasonably calculated to lead to the discovery

of admissible evidence." Fed.R.Civ.P. 26(b)(1). Consequently, "[a] party is entitled to depose a witness on all relevant issues as to which the witness has knowledge." *CBS, Inc. v. Ahern,* 102 F.R.D. 820, 822 (S.D.N.Y. 1984). However, the court must limit discovery if "discovery sought is unreasonably cumulative or duplicative." Fed.R.Civ.P. 26(b)(2). Rule 26 also provides that "for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). In addition to rights conferred by Rule 26, Rule 45 provides that a subpoena may be quashed or modified if it "subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iv). Reviewing a motion to limit discovery or quash a subpoena, courts apply a balancing test to weigh the burden on the moving party against the need of the party seeking the deposition. *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102-03 (D.D.C. 2005) (citing *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547, (11th Cir. 1985); *Insulate Am. v. Masco Corp.,* 227 F.R.D. 427, 432 (W.D.N.C. 2005); *Wyoming v. U.S. Dep't. of Agric.,* 208 F.R.D. 449, 452-53 (D.D.C. 2002)).

Normally, the party seeking to modify or quash a subpoena bears the burden of showing an undue burden, and that burden of proof is particularly great when the party seeks to prevent a deposition entirely rather than merely modify it. *See Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762, 766 (D.C. Cir. 1965); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). However, the burden shifts when the potential deponent is opposing counsel. Depositions of opposing counsel are generally disfavored in federal courts. *Hickman v. Taylor*, 329 U.S. 495, 513 (1947); *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 276-77 (D.D.C. 2001); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999). Thus, when seeking to depose opposing counsel,

the cards are stacked against the requesting party from the outset and they must prove the deposition's necessity. *Jennings*, 201 F.R.D. at 277. This proof requires a showing that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.*; *Shelton*, 805 F.2d at 1327; *Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, No. 97-01810, 1999 WL 1815561, at *1 (D.D.C. Feb. 2, 1999).

This Court finds that plaintiff has not met its burden of proving the necessity and relevance of deposing opposing counsel Debra Evenson, and thus the deposition will be quashed. In its Opposition, plaintiff first claims that Debra Evenson "has filed no documents, never contacted counsel for Plaintiff, nor has she ever "appeared" in the action," and thus that she is not "litigation counsel" in this case. (Pl.'s Opp'n 5-6.) Yet the concerns articulated by the *Shelton* court did not indicate that only attorneys of record are protected by the standard. The *Shelton* court was concerned with disruptions to the adversarial system, delays in the litigation process, and a decrease in the quality of client representation, since "counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Shelton*, 805 F.2d at 1327. Plaintiff's counsel can surely envision a situation where an attorney, though not attorney of record, becomes heavily involved in a case handled by his or her law firm, such that the client's quality of representation would be decreased by that attorney's preoccupation with a deposition. Such is clearly the case here, as plaintiff's own Opposition depicts Ms. Evenson's heavy involvement in this dispute.

The two issues plaintiff wishes to explore in its deposition of Ms. Evenson appear to be: (1) her relationship with Flora Gonzales, defendant's expert; and (2) her knowledge of the Cuban legal system. (Pl.'s Opp'n 3.) The first topic fails the *Shelton* test on its first prong. Plaintiff

asserts that "Ms. Debra Evenson has specific information (*which only she retains*) regarding her specific contacts, places, times, etc. with Flora Gonzales . . ." (Opp'n 9) (emphasis added). It is entirely clear that information regarding meetings and a relationship between two people are in fact known to both people. Thus, plaintiff may depose Flora Gonzales about the alleged relationship between her and Ms. Evenson, or rely on the testimony already acquired in the TTAB proceeding. Obviously, "other means exist to obtain the information other than to depose opposing counsel," failing the *Shelton* test.

As to the second topic, plaintiff asserts that "it is hardly likely that there exists another person in the United States with such knowledge of Cuba's legal system and Cuban entities' litigation in the United States than Ms. Debra Evenson. (Opp'n 9.) Even if this assertion did meet the first factor of the *Shelton* test, plaintiff seeks to fulfill its burden as to the second prong by merely stating "the Court is free to determine whether such areas of inquiry are indeed 'relevant' and if not, to frame appropriate areas of inquiry." *Id.* at 10. As to the crucial nature of the sought testimony, plaintiff declares that "the information sought is crucial to the preparation of this case since Ms. Evenson is so clearly tied with the Republic of Cuba, its institutions, companies, and the like." *Id.* At no time does plaintiff discuss why general ties to Cuba and its institutions are relevant or crucial to this U.S. trademark dispute. Because *Shelton* and the related cases require the moving party to *show* or *prove* the relevance and necessity of the testimony sought, this Court finds that plaintiff's conclusory assertions do not meet its burden. Plaintiff will not be allowed to depose Debra Evenson, and the subpoena will be quashed.

**V. Motion to Enlarge Time**

In light of the Court's modification of the entire scheduling order, defendant's Motion to Enlarge the Time for Completing Expert Disclosures will likewise be granted, though the dates

13

in plaintiff's Motion for Leave to Amend will apply. The new deadline for plaintiff to serve expert disclosures is October 31, 2009, and the close of discovery on plaintiff's expert is November 30, 2009. Thus, the August 26th deposition is appropriate.

## VI. Conclusion

For the foregoing reasons,

The Motion for Leave to Amend [25] will be **GRANTED**,

The Motion to Preclude, Compel, and for Sanctions [19] will be **GRANTED**,

The Motion for Protective Order and to Quash [30, 31] will be **GRANTED**,

The Motion to Enlarge the Time [44] will be **GRANTED**.

A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on August 18, 2009.